**LATHROP GAGE LLP**
Brian W. Fields (Admitted *Pro Hac Vice*)
  bfields@lathropgage.com
J. Bradley Leitch (Admitted *Pro Hac Vice*)
  bleitch@lathropgage.com
2345 Grand Blvd., Suite 2200
Kansas City, MO 64108-2618
Telephone:  (816) 292-2000
Facsimile:  (816) 292-2001

Caroline A. H. Sayers (State Bar No. 209815)
  csayers@lathropgage.com
1888 Century Park East, Suite 1000
Los Angeles, CA 90067
Telephone: (310) 789-4600
Facsimile: (310) 789-4601

Attorneys for Defendants Exposition Park Holding SEZC, OPSkins Group, Inc., Jonathan Yantis, William Quigley, and Malcolm CasSelle

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRYPTO ASSET FUND, LLC, a Delaware limited liability company, and DIGITAL CAPITAL MANAGEMENT, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>OPSKINS GROUP INC., a Canadian company dba WORLDWIDE ASSET EXCHANGE; EXPOSITION PARK HOLDINGS SEZC, a Cayman Islands corporation; WILLIAM QUIGLEY, an individual; JONATHAN YANTIS, an individual; JOHN BRECHISCI, JR., an individual; MALCOLM CASSELLE, an individual; and DOES 1-10, inclusive,<br><br>Defendant. | Case No.  2:19-cv-06983-CJC-JCx<br><br>[Hon. Cormac J. Carney]<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS'** *EX PARTE* **APPLICATION (DKT. 42) FOR RECONSIDERATION OF THE COURT'S NOVEMBER 13, 2019 ORDER** |

Plaintiffs' *Ex Parte* Application (Dkt. 42) for Reconsideration of the Court's November 13, 2019 Order (Dkt. 39) appears to have two goals: 1) avoid obtaining testimony of Thomas Graham, which the Court has ordered; and 2) submit additional briefing the Court did not request on issues that have been addressed in ten briefs so far. Defendants, on the other hand, are attempting to 1) obtain Mr. Graham's testimony as the Court ordered, and 2) brief "the import of Mr. Graham's testimony on the agency issues," as the Court also ordered. (Dkt. 39, at 2.)

Defendants believe the evidence they have presented clearly demonstrates Mr. Graham was Plaintiffs' agent with actual and ostensible authority to accept and agree to be bound by the Terms of Token Sale ("TOTS"), as all other purchasers were required to do, in connection with Plaintiffs' purported purchase of WAX tokens. Defendant William Quigley submitted additional evidence establishing these facts with his Motion to Dismiss or Stay filed November 21, 2019. (Dkt. 40.)

Specifically, that evidence establishes not only that Plaintiffs dispatched Mr. Graham as their agent to purchase WAX, but also that Plaintiffs' Timothy Enneking informed Mr. Quigley and Mr. CasSelle, **in their first discussion** regarding Plaintiffs' interest in WAX, that **Mr. Graham was Plaintiff CAF's Head of ICOs** and that Mr. Graham would contact them to coordinate the purchase of their WAX. (Dkt. 40-1 [Quigley Supp. Decl.], ¶¶ 5-8.) Plaintiffs' CAMCrypto30 fund detail also shows Plaintiffs' "team" members as "Timothy Enneking, Founder and Managing Director" and "**Tom Graham, ICO Analyst Head**," as Enneking had described him. (Dkt. 40-6, Exh. A, pp. 4-5, p. 7.) Mr. Graham contacted Mr. CasSelle as Mr. Enneking said he would, identified himself as the person who handles ICOs for CAF, and purchased WAX tokens for Plaintiffs pursuant to the TOTS, which requires arbitration of Plaintiffs' claims. (Dkt. 14-2 [CasSelle Decl.], ¶¶ 9-18.)

Nonetheless, the Court should not accept Plaintiffs' attempt to avoid Mr. Graham's testimony and to present additional briefing on issues that have been the subject of ten briefs to date.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION
-1-

I. **PLAINTIFFS AGREE DEPOSING GRAHAM BY DECEMBER 6, 2019, IS IMPRACTICABLE.**

Plaintiffs acknowledge that the parties will likely not be able to comply with the Court's deadline to depose Mr. Graham by December 6, 2019. (Pts.' App. [Dkt. 42] at 4:1-2.) All parties thus agree on this point because Mr. Graham is not a United States citizen and is located outside the United States. As a result, he will likely have to be deposed via a Letter of Request pursuant to The Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters ("Hague Evidence Convention"). (*See* Dkt. 41 [Defs.' *Ex Parte* Application], filed Nov. 21, 2019 at 2:23-27, 3:1-9).) All parties thus have respectfully requested the Court vacate the December 6, 2019 deadline for Mr. Graham's deposition.

II. **MR. GRAHAM'S TESTIMONY IS OBTAINABLE.**

Plaintiffs complain that Defendants would not agree to Plaintiffs' proposed means of bringing "these jurisdictional issues" (i.e., the ability to depose Mr. Graham) before the Court. Defendants would not agree in part because they believe the appropriate first step is to attempt to depose Mr. Graham and obtain the evidence the Court ordered – evidence that Plaintiffs' *Ex Parte* Application for Reconsideration makes obvious they do not want the Court to consider.

Plaintiffs have not presented any authority that prohibits deposing Mr. Graham, and procedures exist by which he may be compelled to testify in a deposition because it is within the Court's inherent authority and is expressly permitted by Federal statute and the Federal Rules of Civil Procedure. *See* 28 U.S.C. § 1781(b)(2) and F.R.C.P. Rule 28(b). *See also Upper Deck Int'l. B.V. v. Upper Deck Co.*, No. 11cv1741–LAB(KSC), 2013 WL 3746086, *1-3 (S.D. Cal. July 12, 2013) (granting issuance of letter of request pursuant to Hague Convention for deposition of foreign third party witness); *MicroTechnologies, LLC v. Autonomy, Inc.*, No. 15–cv–02220–RMW (HRL), 2016 WL 1273266, *1-4 (N.D. Cal. Mar. 14, 2016) (approving letter rogatory to London's High Court pursuant to the Hague Convention); *In re Lithium Ion*

*Batteries Antitrust Litigation*, No. 13-md-02420-YGR(DMR), 2017 WL 2615763, *2-3 (N.D. Cal. June 16, 2017) (ordering parties to confer and develop a joint letter rogatory).

Once this Court issues a Letter of Request, the Letter is transmitted to the appropriate authority in the United Kingdom, where the parties believe Mr. Graham to be located. The authority in the United Kingdom is obligated under the Hague Evidence Convention to use "appropriate measures of compulsion" to require Mr. Graham to sit for a deposition. 23 U.S.T. 2555, T.I.A.S. No. 7444 (Hague Evidence Convention) Ch. 10. In fact, the Hague Evidence Convention allows a requested authority (such as the United Kingdom authority would be here) to refuse to execute a letter of request only in limited circumstances, which are not present here – e.g., when either the country issuing the letter of request does not have that function within its judiciary or the requested authority considers that its "sovereignty or security would be prejudiced" by the letter of request. *Id.* at Ch. 12. *See Evanston Ins. Co. v. OEA, Inc.*, No. CIV S-02-1505 DFL PAN, 2006 WL 1652315, at *3 (E.D. Cal. June 13, 2006) ("Under the terms of the Hague Convention, 28 U.S.C. § 1781, depositions are conducted by a letter of request where the evidence to be addressed at such deposition is intended for use in a judicial proceeding. Both the United States and Great Britain are signatories to the Hague Convention.").

### III. PLAINTIFFS' REQUEST TO SUBMIT ADDITIONAL BRIEFING SHOULD BE DENIED.

Plaintiffs suggest that instead of obtaining Mr. Graham's testimony and briefing "the import of Mr. Graham's testimony on the agency issues presented in [Defendants' Motions to Dismiss]," as the Court requested (Dkt. 39, at 2), the parties instead should submit additional briefs on the agency issues without Mr. Graham's testimony. (Dkt. 42 [Pts.' App.] at 2:9-15.) While Defendants are willing to submit additional briefs on any issues that the Court believes need to be addressed, Defendants are attempting to comply with the Court's specific order for additional

briefing "regarding the import of Mr. Graham's testimony." Defendants would not agree to Plaintiffs' proposal to evade the Court's directive, and it is for that reason that Defendants refused Plaintiffs' proposed stipulation.

Plaintiffs' request that the Court "give all parties the same opportunity to submit further documentary evidence" (Dkt. 42, at 1-2) begs the question of why Plaintiffs did not submit that evidence in their three previous briefs, or why they apparently do not want to submit any such evidence in response to Defendant Quigley's Motion to Dismiss or Stay filed on November 21, 2019 (Dkt. 40). The probable true reason is that Plaintiffs want to file the evidence in a way that does not allow Defendants to respond to it, as Defendants could have if Plaintiffs had filed the evidence in any of their three previous responsive briefs, or could if they were to file it in response to Mr. Quigley's Motion.

This is consistent with Plaintiffs' ongoing refusal to produce the contract by which they claim to have purchased WAX tokens from Defendants – even after the Court ordered Plaintiffs to submit any such contract to the Court in its November 13, 2019 Order. (Dkt. 39 at 1 ("Plaintiffs need to submit to the Court the contract they allege was breached so the Court can determine whether Plaintiffs are relying on an agreement for the breach of contract claim that they contend contains no arbitration provision.") Defendants' counsel again respectfully requested that Plaintiffs produce the contract during a call on November 18 and by email on November 20, 2019, so Defendants could consider the contract in connection with Mr. Quigley's Motion. Plaintiffs' counsel refused, saying they were not required to produce the contract until mid-December, thereby preventing Defendants an opportunity to address it (assuming it actually exists).

### IV. ALTERNATIVE DISCOVERY

The Court's Order provides that the interests of justice warrant obtaining Mr. Graham's testimony regarding his role as Plaintiffs' agent because such evidence may be relevant in deciding whether the parties have a valid arbitration agreement.

(Dkt. 39 at 1.)  Plaintiffs apparently seek to provide the Court other, unidentified evidence.  There is no support for Plaintiffs' position.

As indicated above, Defendants believe the evidence they have presented (and that Plaintiffs have not rebutted) establishes that Mr. Graham was Plaintiffs' agent and that Plaintiffs are bound by the Arbitration Agreement in the TOTS to which he committed them.  Nonetheless, if the Court believes it appropriate, Defendants would be willing to attempt to provide whatever additional evidence the Court requests regarding Mr. Graham's agency relationship with Plaintiffs.  Evidence regarding that relationship, however, obviously would reside mostly with Plaintiffs, and to date they have chosen not to present it.

Consistent with Defendants' *Ex Parte* Application (Dkt. 41), Defendants suggest that appropriate efforts be made to depose Mr. Graham, as the Court ordered.  If Mr. Graham is not deposed within 60 days (despite good faith efforts), the parties should consult the Court regarding possible means of obtaining any alternative evidence the Court may need to rule on Defendants' pending motions to dismiss.

## V.   UNDUE DELAY AND EXPENSE

Contrary to Plaintiffs' assertions, Defendants do not seek "to put this entire litigation on hold indefinitely" – they simply seek 60 days to attempt to comply with the Court's order to take the deposition of Mr. Graham.  Defendants specifically have requested that as part of putting off the December 6 deadline, the Court should require the parties to report back after 60 days if they are unable to depose Mr. Graham within that time.  Given the procedures that are anticipated to be necessary to depose Mr. Graham, a 60-day period is entirely reasonable.

While Plaintiffs complain that Defendants are seeking to cause unnecessary delay and expense, Plaintiffs have brought all of the current issues on themselves by denying their clear obligations to arbitrate, which were accepted by Mr. Graham as their agent.  Plaintiffs engaged Mr. Graham, knowing him to be from London, to

purchase WAX tokens for them from Defendant Exposition Park Holdings SEZC, which they knew to be based in the Cayman Islands.[1]

Plaintiffs should not now be heard to complain that Mr. Graham (whom they claim to have made no attempt to contact regarding this case (*see* Pts.' App. at 1 n.1, lines 23-28)) is not at the Court's or Defendants' immediate disposal, and that some procedural efforts may be required to obtain the evidence the Court has ordered.

## VI. DEFENDANTS' *EX PARTE* APPLICATION COMPLIED WITH THE COURT'S RULES.

Plaintiffs argue that Defendants' counsel did not inform Plaintiffs' counsel of the date they intended to file Defendants' *Ex Parte* Application. (Pts.' App. at 2-3 n.2.) Even assuming this is true, it had to have been obvious to Plaintiffs' counsel that Defendants' would file their application either on November 21 or 22 given the discussions between the parties throughout last week (as reflected in Fields' Declaration (Dkt. 41-1) and the Goldberg Declaration (Dkt. 42-1).) Those discussions ended on November 21 in the afternoon with a phone call Defendants' counsel had requested in a final attempt to stipulate to procedure going forward that would avoid the need for separate *ex parte* applications – Plaintiffs' counsel first flat rejected Defendants' counsel's invitation to discuss the issues saying: "No need to discuss. We will proceed as advised." (Dkt. 42-2 [Goldberg Dec.] at 10 (Nov. 21, 2019, 11:17

---

[1] It is worth noting that Plaintiff CAF has direct business connections to the Cayman Islands. Plaintiff DCM's website describes CAF's investment "Strategies" for its Cayman Island feeder fund as follows: "CAF . . . is structured as a master-feeder fund, and managed by Digital Capital Management, LLC. Crypto Asset Fund, LLC, a US fund, is the master fund and accepts investments primarily from US investors. **Crypto Asset Fund (Cayman), Ltd., a Cayman Islands** feeder fund, invests substantially all its assets in the US master. . . .Both the CAF US master and **Cayman feeder** offer the strategies and classes described above." (Dkt. 40-8, Exh. C, p. 19.) The CAF "Fact Sheet" states: "CAF, a US fund managed by Digital Capital Management, LLC ('DCM'), * is the master fund in a master-feeder structure and accepts investments primarily from US investors and from **Crypto Asset Fund (Cayman), Ltd. ('CAF(C)'). CAF(C) is a Cayman Islands feeder fund that invests substantially all its assets in CAF**. . . ." (Dkt. 40-9, Exh. D, p. 44.)

am email from Goldberg to Fields).)  Plaintiffs' counsel later agreed to a second request for the call, which ended with counsel agreeing they would file separate applications.

Plaintiffs have not (because they cannot) claimed they were prejudiced from Defendants' alleged failure to provide the date on which Defendants would file their application, or even suggested any advantage Defendants gained by any such failure.

Dated:  November 25, 2019   LATHROP GAGE LLP

By: /s/ *Caroline A. H. Sayers*
    Caroline A. H. Sayers
    Attorneys for Defendant
    Exposition Park Holdings SEZC,
    OPSkins Group, Inc., Jonathan
    Yantis, William Quigley, Malcolm
    CasSelle

31978356v.3